UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUCKY VINTAGE BRANDS, LLC; and PETER GISSING, <br><br> Plaintiffs, <br><br> v. <br><br> OHIO SECURITY INSURANCE COMPANY, <br><br> Defendant. | C22-0417 TSZ <br><br> ORDER |

THIS MATTER comes before the Court on cross-motions for partial summary judgment, docket nos. 15 and 19, on the issue of defendant insurer's duty to defend plaintiffs in an underlying lawsuit. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

**Background**

Plaintiffs Lucky Vintage Brands, LLC ("Lucky Vintage") and its managing member Peter Gissing (collectively "Plaintiffs") bring this action against defendant Ohio Security Insurance Company ("Ohio Security") for breach of contract, bad faith, and alleged violations of the Washington Consumer Protection Act ("CPA") and Washington

ORDER - 1

Insurance Fair Conduct Act ("IFCA"). Compl. at ¶¶ 3.1–6.5 (docket no. 1-2); Gissing Decl. at ¶ 1 (docket no. 17). Lucky Vintage, doing business as DesteeNation, markets and sells "nostalgia branded apparel" displaying logos and artwork of "iconic local companies." Compl. at ¶ 2.2. Between January 11, 2021, and January 11, 2022, Lucky Vintage was insured under a commercial liability policy (the "Policy") issued by Ohio Security. *Id.* at ¶ 2.3; Ex. C to Gissing Decl. (docket no. 17).

In February 2021, Matthew Pollitz, who operates X-Ray Auto, a local repair shop for vintage Volvo automobiles, and Hazlewood, LLC ("Hazlewood"), a cocktail lounge in Seattle's Ballard neighborhood, commenced in King County Superior Court a putative class action against Plaintiffs (the "Pollitz Lawsuit") for breach of contract and violation of the CPA. Compl. at ¶ 2.4 (docket no. 1-2); 2d Am. Class Compl. ("Pollitz Compl.") at ¶¶ 8–9 & 34–42, Ex. A to Gissing Decl. (docket no. 17). Pollitz and Hazlewood alleged that they had entered into written "Member Royalty Agreements" with Lucky Vintage whereby Pollitz and Hazlewood granted to Lucky Vintage licenses in their respective logos and art for use on Lucky Vintage's apparel. Pollitz Compl. at ¶¶ 12–14. In exchange for the licenses, Lucky Vintage allegedly agreed to remit to Pollitz and Hazlewood royalties from the sale of apparel displaying their respective logos and art, and to provide quarterly statements documenting Lucky Vintage's sales numbers and internet traffic statistics. *Id.* Pollitz and Hazlewood contended that, despite multiple requests, Lucky Vintage never provided them any royalties or quarterly statements, as required under their respective contracts, *id.* at ¶¶ 15–16, and they sought to represent a class of similarly situated persons and businesses in Washington, Arizona, Hawaii,

ORDER - 2

1  California, North Carolina, and Texas whose artwork and logos were sold by Lucky
2  Vintage but who did not receive royalty payments or quarterly statements, *id.* at ¶ 24.
3       In September 2021, Plaintiffs tendered the Pollitz Lawsuit to Ohio Security for
4  defense and indemnity coverage, claiming that the Pollitz Lawsuit alleged a covered
5  "personal and advertising injury" under the Policy.  Compl. at ¶ 2.7 (docket no. 1-2);
6  Gissing Decl. at ¶ 7.  By letter dated September 15, 2021, Ohio Security denied the tender
7  and explained that the Pollitz Lawsuit did not allege a covered personal and advertising
8  injury as that term is defined by the Policy, and that the allegations in the Pollitz Lawsuit
9  were subject to the Policy's breach of contract exclusion.  Ex. B to Gissing Decl. (docket
10 no. 17).  By letter dated September 24, 2021, Plaintiffs' counsel demanded that Ohio
11 Security reconsider its position.  Ex. A to Beecher Decl. (docket no. 16).  By letters dated
12 October 27 and November 12, 2021, Ohio Security informed Plaintiffs that it would not
13 reconsider its denial of their tender.  *Id.* at Exs. B–C.
14      Meanwhile, on November 4, 2021, Plaintiffs commenced the present action in
15 King County Superior Court by serving Ohio Security via the Office of the Washington
16 State Insurance Commissioner, *see* Compl. (docket no. 1-2), and Ohio Security removed
17 the matter to this Court in April 2022, *see* Notice of Removal (docket no. 1).  Plaintiffs
18 now move, docket no. 15, for partial summary judgment as to their first cause of action
19 for breach of contract, and ask the Court to conclude as a matter of law that Ohio Security
20 breached its duty to defend them in the underlying Pollitz Lawsuit.  Ohio Security cross
21 moves, docket no. 19, for partial summary judgment as to Plaintiffs' claim for breach of
22
23

ORDER - 3

contract, arguing that it properly denied their tender under the Policy. The duty to defend is the sole issue before the Court on these motions.

**Discussion**

**1.      Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)). Under Washington law, which the parties agree applies to this dispute, "the interpretation of language in an insurance policy is a matter of law." *See Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271, 267 P.3d 998 (2011).

**2.      Duty to Defend**

The duty to defend is broader than the duty to indemnify, and "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (quoting *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999)).  "While the duty to indemnify exists only if the policy covers the insured's liability, the duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802, 329 P.3d 59 (2014).  Because the duty to defend is one of the main benefits of an insurance contract, *Truck Ins. Exch.*, 147 Wn.2d at 760, it demands that the insurer "give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint," *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 60, 164 P.3d 454 (2007).  To that end, an insurer "may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Truck Ins. Exch.*, 147 Wn.2d at 761.

Courts generally determine the duty to defend by reviewing the "eight corners" of the insurance contract and the underlying complaint. *Expedia, Inc.*, 180 Wn.2d at 803. "Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend." *Truck Ins. Exch.*, 147 Wn.2d at 760 (citing *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998)).  If the complaint is ambiguous, the court will construe it "liberally in favor of triggering the duty to defend." *Expedia, Inc.*, 180 Wn.2d at 803.  In this matter, the parties do not argue that the underlying complaint is

ORDER - 5

ambiguous, and Ohio Security contends that it properly denied Plaintiffs' tender for two independent reasons: (a) because the Pollitz Lawsuit does not allege damages caused by a covered personal and advertising injury; and (b) because the Policy's breach of contract exclusion bars coverage.

### a. Personal and Advertising Injury

The parties dispute whether the Pollitz Lawsuit seeks damages caused by a covered personal and advertising injury. The Policy at issue provides that Ohio Security "will pay those sums that the insured becomes legally obligated to pay because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." Policy at 39, Ex. C to Gissing Decl. (docket no. 17 at 27). The insurance applies "[t]o 'personal and advertising injury' caused by an offense arising out of [the insured's] business[.]" *Id.* at 40 (docket no. 17 at 28). Personal and advertising injury is defined by the Policy to include seven specific categories of offenses, only one of which (the sixth or item "f") is at issue in this dispute.[1] *See id.* at 57 (docket no. 17 at 45).

---

[1] The seven categories of offenses are: (a) "False arrest, detention or imprisonment"; (b) "Malicious prosecution"; (c) "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor"; (d) "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"; (e) "Oral or written publication, in any manner, of material that violates a person's right of privacy"; (f) "The use of another's advertising idea in your 'advertisement'"; and (g) "Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Policy at 57, Ex. C to Gissing Decl. (docket no. 17 at 45). The Policy defines "advertisement" as:

> [N]otice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

Here, Plaintiffs contend that the Pollitz Lawsuit seeks damages for a personal and advertising injury caused by "[t]he use of another's advertising idea in [Lucky Vintage's] 'advertisement.'"  Pls.' Mot. at 7 (docket no. 15) (quoting Policy at 57).

Ohio Security argues that the Policy does not afford Plaintiffs coverage because the Pollitz Lawsuit does not allege the requisite causal connection between Lucky Vintage's advertising activities and the purported harm.  Stated differently, Ohio Security contends that the Pollitz Lawsuit does not allege injury caused by Lucky Vintage's use of Pollitz's or Hazelwood's logos or artwork, i.e., their advertising ideas.  Def.'s Mot. at 8–12 (docket no. 19).  Rather, the Pollitz Lawsuit alleges injury caused by Lucky Vintage's failure to remit to Pollitz and Hazelwood royalty payments and monthly sales reports required under the terms of their respective licensing agreements.  The Court agrees with Ohio Security.

An advertising injury must have "a causal connection with the insured's advertising activities.  That is, the advertising activities must cause the injury, not merely expose it; an injury that could have occurred independent and irrespective of any advertising is not an advertising injury."  *Amazon.com Int'l v. Am. Dynasty Surplus Lines Ins. Co.*, 120 Wn. App. 610, 618, 85 P.3d 974 (2004).  Another Washington appellate

---

  a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

*Id.* at 54 (docket no. 17 at 42).

ORDER - 7

decision, *Australia Unlimited, Inc. v. Hartford Casualty Insurance Company*, 147 Wn. App. 758, 198 P.3d 514 (2008), is instructive.  There, Crocs, Inc. ("Crocs"), a shoe manufacturer, brought an action in the District of Colorado against Australia Unlimited, Inc. ("AU") and several other shoe manufacturers for alleged patent infringement, trade dress infringement, violation of the Colorado Consumer Protection Act, and common law unfair competition ("Colorado I").  *Id.* at 767.  AU tendered defense of Colorado I to its insurer, which denied the tender.  *Id.*  AU eventually settled Colorado I with Crocs "on terms that included Crocs being given the right to approve new designs to be manufactured by AU[.]"  *Id.* at 780.  After the administration of the settlement agreement broke down, Crocs commenced a separate action against AU in Colorado state court for breach of the settlement agreement, and that action was subsequently removed to the District of Colorado ("Colorado II").  *Id.*  AU tendered defense of Colorado II to the same insurer, which denied the tender.  *Id.* at 764.  AU, a Washington corporation, later brought suit in Washington state court against the insurer for breach of contract, bad faith, and a violation of the CPA.  *Id.* at 764–65.

      In concluding that the insurer breached its duty to defend AU in the Colorado I lawsuit, the Washington Court of Appeals explained that Croc's allegations of trade dress infringement in the underlying complaint sufficiently alleged a personal and advertising injury within the meaning of AU's insurance policy.  *Id.* at 770–76.  The Washington Court of Appeals, however, rejected AU's argument that its insurer was required to defend the company in Colorado II.  *Id.* at 780–81.  Unlike the complaint in Colorado I, which contained allegations of trade dress infringement (a personal and advertising

injury), the complaint in Colorado II alleged only that AU breached the terms of the parties' settlement agreement by using an unapproved design. *Id.* Because the underlying complaint in Colorado II did not allege that AU marketed the allegedly infringing shoes, the complaint did not plead a personal and advertising injury within the meaning of the applicable insurance policy. *Id.* ("Unlike the Colorado I complaint, which sought relief, at least in part, based on AU's 'copy or colorable imitation of the Crocs Trade Dress,' the Colorado II complaint seeks relief based on AU's use of a 'design not approved by Crocs.'").

Plaintiffs contend that Ohio Security's reliance on *Australia Unlimited* is misplaced because the Washington Court of Appeals determined that the insurer breached its duty to defend AU in the Colorado I lawsuit. Plaintiffs argue that, like the allegations of trade dress infringement in the Colorado I complaint, the facts Pollitz and Hazelwood pleaded in the underlying complaint allege a personal and advertising injury conceivably covered under the Policy because Lucky Vintage used Pollitz's and Hazelwood's advertising ideas and purportedly owes them monetary damages as a result of that use. Pls.' Mot. at 8–9. This argument, however, ignores the unambiguous causal language included in the Policy, and the Court cannot interpret an insurance policy in a manner that renders certain terms superfluous and without meaning. *See Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 716, 375 P.3d 596 (2016). As discussed above, the Policy at issue in this matter grants coverage because of a personal and advertising injury only if caused by "[t]he use of another's advertising idea in [Lucky Vintage's] 'advertisement.'" Policy at 57 (docket no. 17 at 45).

ORDER - 9

Here, the underlying complaint does not allege a personal and advertising injury as that term is defined in the Policy. Although the Pollitz Lawsuit alleges that Lucky Vintage printed Pollitz's and Hazelwood's "logos and art on apparel for sale in [Lucky Vintage's] retail and online stores," Pollitz Compl. at ¶ 12, the underlying complaint acknowledges that Lucky Vintage had a valid license to market apparel displaying the logos and art, *id.* at ¶¶ 12–13. The underlying complaint does not allege that Pollitz's and Hazelwood's injury was *caused by* Lucky Vintage's *use* of their respective logos and art. Instead, Pollitz and Hazelwood allege that they suffered damages because Lucky Vintage breached the licensing agreements by failing to pay the specified percentages of its sales. *See*, *e.g.*, *id.* at ¶¶ 12, 15–21. Thus, this matter is similar to the Colorado II lawsuit, where the claimed damages resulted from an alleged breach of a settlement agreement. Having reviewed the underlying complaint, the Court concludes that the claims alleged in the Pollitz Lawsuit are clearly not covered by the Policy. Ohio Security therefore had no duty to defend Lucky Vintage and Gissing in the underlying action.

    **b.**  **Breach of Contract Exclusion**

The Court also agrees with Ohio Security that the Policy's breach of contract exclusion provides an independent basis to deny coverage. The Policy provides in relevant part that it does not apply to personal and advertising injury "[a]rising out of a breach of contract, except an implied contract to use another's advertising idea in [the insured's] 'advertisement.'" Policy at 48 (docket no. 17 at 36). Although Plaintiffs concede that this exclusion would eliminate coverage if the Pollitz Lawsuit had alleged only a cause of action for breach of contract, Pls.' Reply at 9 (docket no. 21), Plaintiffs

ORDER - 10

argue that the presence of a CPA claim in the underlying complaint renders this exclusion inapplicable. The CPA claim pleaded in the underlying complaint arises, however, out of an alleged breach of contract.[2]

Washington courts interpret the phrase "arising out of" to be clear and unambiguous, and broader than the phrases "caused by" or "resulted from." *Austl. Unlimited, Inc.*, 147 Wn. App. at 774. Courts construe the phrase to mean "originating from," "having its origin in," "growing out of," or "flowing from." *Id.* (citation omitted). In the underlying complaint, Pollitz and Hazelwood clearly and unambiguously allege that Lucky Vintage and Gissing violated the CPA by failing to remit royalty payments and quarterly sales statements to Pollitz, Hazelwood, and members of the putative class. *See* Pollitz Compl. at ¶ 35. As alleged in the underlying complaint, Lucky Vintage and Gissing were required to make royalty payments and provide sales statements to Pollitz, Hazelwood, and the putative class members pursuant to Member Royalty Agreements. *See id.* at ¶¶ 12–14. The underlying complaint alleges that these Member Royalty Agreements are binding contracts, *see id.* at ¶ 41, and the existence of the agreements is cited as a common factual question supporting class certification, *id.* at ¶ 27. Thus, despite Plaintiffs' arguments to the contrary, the CPA claim asserted in the Pollitz

---

[2] The CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" RCW 19.86.020. To prevail on a private CPA claim, a plaintiff must prove (i) an unfair or deceptive act or practice, (ii) occurring in trade or commerce, (iii) affecting the public interest, (iv) an injury to the plaintiff's business or property, and (v) causation. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85, 719 P.2d 531 (1986)).

Lawsuit arises from an alleged breach of contract.[3]  Because the allegations in the Pollitz Lawsuit are clearly subject to the Policy's breach of contract exclusion, Ohio Security has no duty to defend Lucky Vintage and Gissing.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiffs' motion for partial summary judgment, docket no. 15, is DENIED.

(2) Defendant Ohio Security's motion for partial summary judgment, docket no. 19, is GRANTED, and Plaintiffs' first cause of action for breach of contract is DISMISSED with prejudice.  The Court concludes as a matter of law that the Policy does not conceivably cover allegations in the underlying complaint and that Ohio Security therefore has no duty to defend Plaintiffs in the Pollitz Lawsuit.

(3) The parties are DIRECTED to file, on or before June 16, 2023, a Joint Status Report addressing whether and to what extent Plaintiffs' remaining claims are affected by this Order.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

---

[3] Plaintiffs argue that Pollitz's and Hazelwood's CPA claim is not dependent on their breach of contract claim because a party might be liable for unpaid royalties in the absence of a licensing agreement.  *See* Pls.' Mot. at 12–14 (docket no. 15).  Phrased differently, Plaintiffs can imagine a situation in which a litigant is found to have violated the CPA without breaching a contract.  This argument is unpersuasive, and the mere presence of a CPA claim in the Pollitz Lawsuit does not render the Policy's breach of contract exclusion inapplicable.  As discussed above, the appropriate question is whether the personal and advertising injury alleged in the underlying complaint arises out of a breach of contract.

IT IS SO ORDERED.

Dated this 25th day of May, 2023.

                                                Thomas S. Zilly
                                                United States District Judge

ORDER - 13